DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAYSON CARROLL, individually and on behalf of all persons similarly situated,** | : | **Civil Action No. 2:21-cv-01288** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NORTHEAST COMMUNITY CENTER FOR BEHAVIORAL HEALTH,** | : | |
| | : | |
| **Defendant.** | : | |

### SETTLEMENT AGREEMENT AND RELEASE

1. This Settlement Agreement and Release (the "Settlement Agreement," "Settlement" or "Agreement") is entered into between Plaintiff ("Plaintiff"), individually and on behalf of all other similarly situated persons, and Defendant Northeast Community Center for Behavioral Health ("NCCBH"). Named Plaintiff and Defendant may be referred to collectively as the "Parties."

### RECITALS

2. On March 17, 2021, Plaintiff Jayson Carroll, a former non-exempt hourly employee of NCCBH, filed a Class and Collective Action Complaint against Defendant NCCBH alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* (Dkt. No. 1.)

3. NCCBH filed its Answer on May 28, 2021, denying liability.  (Dkt. No. 5.)

4. On June 16, 2021, the Parties attended the initial Pretrial Conference. (Dkt. No. 7.)

5. On June 28, 2021, the Court issued an Initial Scheduling Order. (Dkt. No. 9.)

6. On August 17, 2021, the appearance of former NCCBH counsel was substituted. (Dkt. Nos. 12, 14.)

7. On September 9, 2021, the Parties attended a status conference with the Court. (Dkt. No. 19.)

8. On September 9, 2021, the Court ordered the matter to a settlement conference before the Hon. Elizabeth T. Hey, USMJ. (Dkt. No. 20.)

9. On September 9, 2021, the Parties entered into a Tolling Agreement to toll the

statute of limitations on any claim under the FLSA or any state law claim for unpaid wages for all former and current Blended Case Managers that worked for NCCBH between March 17, 2018 through March 17, 2021.

10.   On September 27, 2021, the Court set out the second joint stipulation and scheduling order. (Dkt. No. 21)

11.   On December 21, 2021, prior to the settlement conference NCCBH, produced data and information to facilitate informed settlement discussions, including payroll data, pay policies, and class list for all Blended Case Managers who worked for NCCBH between March 17, 2017 through the present in Philadelphia, which Plaintiffs' Counsel reviewed and analyzed.

12.   On January 20, 2022, NCCBH supplemented their response and produced further data and information to facilitate informed settlement discussions.

13.   On January 26, 2022, the Parties participated in a settlement conference before the Hon. Elizabeth T. Hey, USMJ.  A settlement was not reached. (Dkt. No 27.)

14.   On February 3, 2022, the Parties participated in a settlement conference before the Hon. Elizabeth T. Hey, USMJ.  A settlement was not reached. (Dkt. No. 29.)

15.   On February 25, 2022, the Parties participated in a settlement conference before the Hon. Elizabeth T. Hey, USMJ.  A settlement was not reached. (Dkt. No. 36.)

16.   On March 7, 2022, as a result of the settlement conferences, and subsequent arms' length negotiations, the Parties have agreed to settle the Action according to the terms of this Settlement Agreement.

17.   As of this date, fourteen (14) individuals filed their consent forms to participate in this lawsuit, including the Plaintiff. (Dkt. Nos. 1, 4, 24, 25, 26, 32, 34, 35, 38.)

18.   Class Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in the Action. In agreeing to this Settlement Agreement, Named Plaintiff has considered: (a) the facts developed during discovery and the Parties' settlement process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendant; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Named Plaintiff has concluded that the terms of this Settlement are fair, reasonable and adequate, and that it is in the best interests of Named Plaintiff, Opt-in Plaintiffs, and the Settlement Class (as defined below) to settle their claims against Defendant pursuant to the terms set forth herein.

19.   Defendant denies the allegations in the Action and deny any liability for alleged failure to pay overtime compensation or any alleged wage payment, wage and hour or similar violation.  This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendant or any of the Releasees (as defined below) of any fault, liability or wrongdoing, which Defendant expressly denies.

20.   The Parties recognize that notice to the Settlement Class of the material terms of

DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

this Settlement, as well as Court approval of this Settlement, are required to effectuate the Settlement, and that the Settlement will not become operative until the Court grants final approval of it, the Settlement becomes Final, and the Settlement Effective Date occurs.

21.     The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b), and class certification pursuant to FED. R. CIV. P. 23(a) and (b)(3) are met. Should this Settlement not become Final, such stipulation to conditional certification or class certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not conditional certification or class certification would be appropriate in a non-settlement context.

22.     In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the final approval of the Court and the other conditions set forth herein, that Named Plaintiff, Opt-in Plaintiffs' and the Settlement Class Members' (as defined below) claims as described herein against Defendant shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Eligible Class Members' Released Claims (as defined below) shall be finally and fully compromised, settled and dismissed as to Defendant and Releasees, in the manner and upon the terms and conditions set forth below.

## DEFINITIONS

23.     The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a.     "Action" means the above captioned Action.

b.     "CAFA Notice" means the notice to be sent by Defendant to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) business days after the submission of this Settlement Agreement to the Court. A copy of any CAFA Notice shall be provided to Class Counsel.

c.     "Class Counsel" means Willig, Williams & Davidson.

d.     "Class Period" means the period from March 17, 2018 through March 17, 2022.

e.     "Court" means the United States District Court for the Eastern District of Pennsylvania.

f.     "Defendant" means Northeast Community Center for Behavioral Health.

g.     "Defendant's Counsel" means Deasey, Mahoney & Valentini, LTD.

h.     "Eligible Class Member" means (i) Named Plaintiff; (ii) Opt-In Plaintiffs,

and (iii) all Settlement Class Members who do not timely and validly exclude themselves from the Settlement.

   i.  "Effective Date" means the first business day after the Court's Final Approval Order if there are no objectors, and if there are any objectors, means the first business day after the Court's Final Approval Order becomes Final.

   j.  "Final" shall mean, with respect to a judgment or order, that the judgment or order is final and appealable and either (a) no appeal, motion, or petition to review or intervene has been taken with respect to the judgment or order as of the date on which all times to appeal, move, or petition to review or intervene therefrom have expired, or (b) if an appeal, motion or petition to intervene or other review proceeding of the judgment or order has been commenced, such appeal, motion or petition to intervene or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of certiorari or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the judgment or order in its entirety.

   k.  "Fee Award" means the award of attorneys' fees that the Court authorizes to be paid to Class Counsel for the services they rendered to Named Plaintiff and the Settlement Class in the Action.

   l.  "Final Approval" or "Final Approval Order" means the Court's Final Approval Order approving the Settlement and entering judgment.

   m.  "Final Approval Hearing" means the hearing to be held by the Court to consider the final approval of the Settlement.

   n.  "Gross Settlement Amount" means the maximum amount that Defendant shall pay in connection with this Settlement, in exchange for the release of the Eligible Class Members' Released Claims, and shall include, subject to Court approval, the Fee Award, an award of litigation costs to Class Counsel, Service Awards, and settlement administration costs. The Gross Settlement Amount is the gross sum of Three Hundred Thousand Dollars and Zero Cents ($300,000.00). In no event shall (i) the Gross Settlement Amount exceed this sum; or (ii) shall Defendant be required to pay more than the Gross Settlement Amount in connection with the Settlement, except that Defendant shall be responsible for their respective attorneys' fees and costs, and Defendant shall be responsible for the employer's share of payroll taxes attributable to the wage portions of the Settlement Awards.

   o.  "Initial Mailing" is defined in Section 31 below.

   p.  "Named Plaintiff" means Jayson Carroll.

   q.  "Net Settlement Amount" means the Gross Settlement Amount less: (i) Fifteen Thousand Dollars ($15,000.00) to the Named Plaintiff Jayson Carroll for his efforts in bringing and prosecuting this matter ("Service Award"); (ii) the payment of the Fee Award, not to exceed one-third (1/3) of the Gross Settlement Amount, plus the payment of out-of-pocket costs incurred by Class Counsel, not to exceed Three Thousand Dollars ($3,000.00). The Parties acknowledge that all these amounts are subject to the Court's approval.

DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

r.      "Notice Deadline" means the date sixty (60) days after the Settlement Notice is initially mailed by the Defendant to the Settlement Class. Settlement Class Members shall have until the Notice Deadline to object to or opt out of the Settlement.

s.      "Opt-In Plaintiffs" means individuals, who at the time of Preliminary Approval, already submitted an Opt-In Consent Form to join this Action.

t.      "Parties" means the parties to this Agreement, Named Plaintiff and Defendant.

u.      "Preliminary Approval" or "Preliminary Approval Order" means the Court's Preliminary Approval Order preliminarily approving the terms and conditions of this Agreement.

v.      "Releasees" means Defendant and their present and former parent companies, subsidiaries, affiliates, divisions, and joint ventures, and all of its and their past and present shareholders, officers, directors, board members, employees, agents, servants, owners, members, investors, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, registered representatives, attorneys, insurers, partners, profit sharing, savings, health and other employee benefit plans of any nature, the successors of such plans and those plans' respective trustees, administrators, agents, employees, attorneys, fiduciaries, and other persons acting on its or their behalf, and each of them, and the predecessors and successors, assigns and legal representatives of all such entities and individuals.

w.      "Settlement Award" means the payment that each Eligible Class Member shall be entitled to receive pursuant to the terms of this Agreement.

x.      "Settlement Class" or "Settlement Class Member" means the Named Plaintiff, all Opt-in Plaintiffs, and all current or former Blended Case Managers who were employed by Defendant between March 17, 2018 through March 17, 2022. There are approximately thirty-three (33) members of the Settlement Class including Plaintiffs. Plaintiffs have relied on this number in agreeing to the Settlement.

y.      "Eligible Class Members' Released Claims" is defined below in Paragraph 26.

z.      "Settlement Notice" means the Notice of Class Action Settlement to the Settlement Class Members substantially in the form as Exhibit A, as approved by the Court.

## RELEASES

24.     In exchange for the consideration set forth in this Settlement Agreement, Named Plaintiff and Eligible Class Members agree to release all claims as set forth herein as applicable.

25.     The Parties acknowledge and agree that, with the exception of the Named Plaintiff, only Eligible Class Members who cash or deposit their Settlement Award check shall release their FLSA claims against Defendant and Releasees. Named Plaintiff shall be deemed to have released

his FLSA and state law claims upon Final Approval by virtue of having executed this Agreement.

26.    **Eligible Class Members' Released Claims:** Upon Final Approval of the Settlement Agreement, Named Plaintiff and Eligible Class Members who worked in Pennsylvania shall and hereby do release and discharge, Defendant and all Releasees, finally, forever and with prejudice of any and all state law claims for unpaid overtime and state wage and hour claims against Defendant that accrued during their work with Defendant during the Class Period, without limitations, all state claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. Eligible Class Members who cash or deposit their Settlement Award check will be deemed to have released their FLSA claims. Defendant agrees that participation in the settlement and release of the Eligible Class Members' Released Claims may not be used to assert collateral estoppel, *res judicata*, waiver or any other claim preclusion of FLSA claims not included in the Eligible Class Members' Released Claims with respect to individuals who did not specifically release those FLSA claims in this Agreement.

27.    **Release Language on Settlement Checks.** The Defendant shall include the following release language on the back of each Settlement Award check:

> By signing or cashing this check, I affirm my release of Northeast Community Center for Behavioral Health and all Releasees of all Eligible Class Members' Released Claims as defined in the Settlement Agreement approved by the Court in *Jayson Carroll, et al. v. Northeast Community Center for Behavioral Health*, 21-cv-01288 (E.D. Pa.). I affirm that I will not sue or assert any of the Eligible Class Members' Released Claims, including FLSA claims, against any Releasee.

28.    **Named Plaintiff's Released Claims.** In exchange for the consideration set forth in this Settlement Agreement, and in addition to the Released Claims, upon the Approval Order of the Court, Plaintiff agrees to release and discharge Defendant and all other Released Parties finally, forever and with prejudice, from any and all causes of action, claims, rights, damages of any nature, penalties, liabilities, expenses, losses, and issues of any kind or nature whatsoever, whether known or unknown, that Plaintiff has or may have against the Released Parties that arose prior to the date on which he executed this Agreement including without limitation any claims arising under the FLSA and any claims that were or could have been asserted in the Complaint based on the facts alleged for unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under applicable wage and hour laws, as well as any claims, whether in law or equity, known or unknown, against Released Parties relating to Named Plaintiff's employment (or alleged employment or joint employment) or termination of employment, including but not limited to claims arising under the Americans with Disabilities Act, National Labor Relations Act, Equal Pay Act, Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1866, 1871, and 1991, including Section 1891 of the Civil Rights Act, the Family and Medical Leave Act, the Pennsylvania Human Relations Act, and/or any other federal, state, or local law, statute, regulation, constitution, ordinance, and/or public policy, contract, or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of unjust enrichment, intentional or negligent infliction of emotional distress.

Named Plaintiff acknowledges that he may have claims that are presently unknown based on actions that took place prior to the date he executes this Agreement and that the release of Named Plaintiff's Released Claims contained in this Settlement Agreement is intended to and will fully, finally, and forever discharge all claims against Defendant and the other Released Parties, whether now asserted or not asserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, which if known, might have affected their decision to enter this release. Named Plaintiff agrees that, although he may discover facts in addition to or different from those that are currently known or believed to be true with respect to Named Plaintiff's Released Claims, it is his intention to fully, finally, and forever settle and release any and all Named Plaintiff's Released Claims, without regard to the subsequent discovery or existence of such additional or different facts.

Provided, however, that nothing in this Agreement prohibits Named Plaintiff from (1) filing a claim or charge with a federal, state or local administrative agency, or (2) reporting, communicating directly with or providing information, including documents, not otherwise protected from disclosure by any applicable law or privilege, to the Securities and Exchange Commission (the "SEC"), the Occupational Safety and Health Administration ("OSHA"), the Equal Employment Opportunity Commission ("EEOC"), or any other federal, state or local governmental agency or commission regarding possible legal violations, without disclosure to the Defendant, subject to the condition that once this Agreement becomes effective, Named Plaintiff may not receive a monetary award in connection with any such charge or complaint that is filed or is filed on Named Plaintiff's behalf with the EEOC or state or local fair employment agency. Named Plaintiff further agrees and acknowledges he has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments to him as set forth in this Agreement are related to sexual harassment or sexual abuse.

29.     Named Plaintiff and Eligible Class Members, to the fullest extent allowed by law, are prohibited from asserting any claims released by them in this Settlement, and from commencing, joining in, prosecuting, or voluntarily assisting in a lawsuit or adversarial proceeding against the Releasees, based on claims released by them in this Settlement. Excluded from this prohibition are any instances where any individual is legally compelled to testify through service of a subpoena or other process.

<u>CERTIFICATION, NOTICE, AND SETTLEMENT **IMPLEMENTATION**</u>

30.     Defendant denies that a class should be certified other than for purposes of this Settlement and reserves its right to continue to contest any class certification motion. Nothing in this Agreement shall be construed as an admission by Defendant or any of the Released Parties that this Litigation is amenable to class certification for any purpose.

31.     The Parties agree to the following procedures for obtaining Preliminary Approval of the Settlement, certifying the Settlement Class, and notifying the Settlement Class of this Settlement:

a.      <u>Request for Class Certification and Preliminary Approval Order</u>. Named Plaintiff shall file an Unopposed Motion for Preliminary Approval of Settlement Agreement, requesting that the Court certify the Settlement Class pursuant to 29 U.S.C. § 216(b) and FED. R. CIV. P. 23(a) and (b)(3) for the sole purpose of settlement; preliminarily approve the Settlement Agreement and its terms; approve the proposed form of the Settlement Notice and find that the proposed method of disseminating the Settlement Notice meets the requirements of due

DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

process and is the best notice practicable under the circumstances; set a date for Named Plaintiff's motion for Final Approval of the Settlement, and approval of the requested Service Award, Fee Award; and set a date for the Final Approval Hearing.

    b. **Notice**. The Defendant shall be responsible for preparing, printing and mailing the Settlement Notice to all Settlement Class Members.

    c. Within ten (10) business days after the Court's Preliminary Approval of the Settlement, NCCBH and Class Counsel shall jointly agree upon, and NCCBH shall create an electronic database containing the names, employee ID number, last known addresses, last known telephone numbers (if any), last known email addresses (if any), social security numbers or tax ID numbers of each Settlement Class Member, location of work, total number of workweeks that each Settlement Class Member worked during the Class Period where the Settlement Class Member worked four or more days in the workweek.

    d. In order to provide the best notice practicable, prior to mailing the Settlement Notice, NCCBH will take reasonable efforts to identify current addresses via public and proprietary systems and by calling the Settlement Class Member.

    e. Within thirty (30) business days after the Court's Preliminary Approval Order, NCCBH shall mail and email (if email addresses are available) the agreed upon and Court approved Settlement Notice to the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members ("Initial Mailing"). NCCBH shall provide notice to Class Counsel that the Settlement Notices have been mailed.

    f. Any Settlement Notice returned to NCCBH with a forwarding address shall be re-mailed within three (3) business days following receipt of the returned mail. If any Settlement Notice is returned to NCCBH without a forwarding address, the NCCBH shall undertake reasonable efforts to search for the correct address and shall promptly re-mail the Settlement Notice to any newly found addresses. In no circumstance shall such re-mailing extend the Notice Deadline.

    g. NCCBH will not take any adverse action against any current NCCBH employee on the grounds that he/she is eligible to participate or does participate in the Settlement. NCCBH also will not discourage participation in this Settlement Agreement or encourage objections or opt-outs. If requested, NCCBH shall state that NCCBH and Class Counsel encourage Settlement Class Members to participate in the Settlement.

    32. **Objections**. The Settlement Notice shall provide that Settlement Class Members who worked in Pennsylvania who wish to object to the Settlement must, on or before the Notice Deadline, mail to Class Counsel and Defendant's Counsel a written statement objecting to the Settlement. Such objection shall not be valid unless it includes the information specified in the Settlement Notice. The statement must be signed personally by the objector, and must include the objector's name, address, telephone number, email address (if applicable), the factual and legal grounds for the objection, and whether the objector intends to appear at the Final Approval Hearing. The Settlement Notice shall advise Settlement Class Members that objections shall only be considered if the Settlement Class Member has not opted out of the Settlement. No Settlement

Class Member shall be entitled to be heard at the Final Approval Hearing (whether individually or through counsel), unless written notice of the Settlement Class Member's intention to appear at the Final Approval Hearing has been filed with the Court and served upon Class Counsel and Defendant's Counsel on or before the Notice Deadline, and the Settlement Class Member has not opted out of the Settlement. The postmark date of mailing to Class Counsel and Defendant's Counsel shall be the exclusive means for determining that an objection is timely mailed to counsel. If postmark dates differ, the later of the two postmark dates will control. Settlement Class Members who fail to return timely written objections in the manner specified above shall be deemed to have waived any objections and oppositions to the Settlement's fairness, reasonableness and adequacy, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. None of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this Settlement, or discourage participation in the Settlement process.

33.     <u>Requests for Exclusion</u>. The Settlement Notice shall provide that Settlement Class Members who worked in Pennsylvania, other than the Named Plaintiff, who wish to exclude themselves from the Settlement ("opt out") must mail to NCCBH a written statement indicating that they do not wish to participate or be bound by the Settlement. The written request for exclusion must contain the Settlement Class Member's full name, address, telephone number, email address (if applicable), and last four digits of their social security number, and must be signed individually by the Class Member. No opt-out request may be made on behalf of a group. Such written statement must be postmarked by the Notice Deadline.

34.     <u>Final Report</u>. Within five (5) business days after the Notice Deadline, NCCBH shall provide to Class Counsel notice of (a) the total number of Settlement Class Members who filed timely and valid requests for exclusion from the Settlement, along with the complete copies of all requests for exclusion, including their postmark dates, and (b) information regarding the total number of Notices returned as undeliverable along with remailing information. NCCBH will work with Class Counsel to prepare a formal report for submission at the Final Approval Hearing.

35.     <u>Final Approval Hearing</u>. After review and approval by Defendant, Named Plaintiff shall request that the Court schedule the Final Approval Hearing no earlier than thirty (30) days after the Notice Deadline to determine final approval of the settlement and to enter a Final Approval Order:

      a.  certifying this Action and Settlement Class as an FLSA collective action under 29 U.S.C. § 216(b) and as a class action under FED. R. CIV. P. 23(a) and (b)(3) for purposes of settlement only;

      b.  finding dissemination of the Settlement Notice was accomplished as directed and met the requirements of due process;

      c.  finally approving the Settlement and its terms as fair, reasonable and adequate;

      d.  directing that the Settlement funds be distributed in accordance with the terms of this Settlement Agreement;

DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

    e.  directing that the Action be dismissed finally, fully, forever and with prejudice and in full and final discharge of any and all Settling Class Members' Released Claims; and

    f.  retaining continuing jurisdiction over this Action for purposes only of overseeing all settlement administration matters.

### SETTLEMENT FUNDS AND AWARD CALCULATION

36.  **Gross Settlement Amount.**

    a.  Within ten (10) business days after Preliminary Approval is granted, NCCBH shall electronically transfer one-third of the amount of the Gross Settlement Amount to a separate NCCBH account to be solely used pursuant to this Agreement. No later than ten (10) business days after the Effective Date, NCCBH shall electronically transfer the balance of the Gross Settlement Amount to the account. Except for any costs associated with distribution of Settlement Notice, the entire Gross Settlement Amount, plus any interest earned on the Gross Settlement Amount, shall be refunded to NCCBH if the Settlement does not obtain Final Approval or otherwise does not become Final, or the Effective Date does not occur.

    b.  **Disbursement by NCCBH.** All disbursements shall be made from the Fund. NCCBH shall be the only entity authorized to make withdrawals or payments from the Fund.

37.  **Payments.** Subject to the Court's Final Approval Order, the following amounts shall be paid by NCCBH from the Gross Settlement Amount:

    a.  **Service Award to Named Plaintiff.** Subject to the Court's approval, Named Plaintiff shall receive his respective Service Award for his efforts in bringing and prosecuting this matter. The Defendant shall issue a Form 1099 for this payment. This payment shall be made within ten (10) business days after the Effective Date.

    b.  **Fee Awards and Costs.**

       (i)  Subject to the Court's approval, Class Counsel shall receive a Fee Award in an amount up to one-third (1/3) of the Gross Settlement Amount, which will compensate Class Counsel for all work performed in the Action as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action. In addition, Class Counsel shall, subject to Court approval, receive reimbursement of their out-of-pocket costs approved by the Court. These payments of attorneys' fees and costs shall be made within ten (10) business days after the Effective Date.

       (ii)  The attorneys' fees and costs paid by Defendant pursuant to this Agreement, out of the Gross Settlement Amount, shall constitute full satisfaction of Defendant's obligations to pay amounts to any person, attorney or law firm for attorneys' fees or costs in this Action on behalf of Named Plaintiff, Opt-In Plaintiffs and/or any Settlement Class Member, and

shall relieve Defendant from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of Named Plaintiff, Opt-In Plaintiffs or any Settlement Class Member.

(iii)    A Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel. Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to them.

c.    **Settlement Awards to Eligible Class Members**. Settlement Awards shall be made to Eligible Class Members as set forth below.

38.    **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement**. No person shall have any claim against Defendant, Class Counsel, or Defendant's Counsel based on distributions or payments made in accordance with this Settlement Agreement.

## CALCULATION AND DISTRIBUTION OF SETTLEMENT AWARDS

39.    **Settlement Award Eligibility**. All Eligible Class Members shall be paid a Settlement Award from the Net Settlement Amount. NCCBH shall be responsible for determining eligibility for, and the amount of, the Settlement Awards to be paid to Eligible Class Members based on the following formula:

a.    The amount of $100 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Member so that each Eligible Class Member receives at least $100 in exchange for their release in this Settlement Agreement.

b.    In addition to the $100 payment set out in (a) above, Eligible Class Members shall receive *a pro rata* portion of the Net Settlement Amount as follows;

i.    For each week during which the Eligible Class Member worked four or more days during the applicable Class Periods, he or she shall be eligible to receive a *pro rata* portion of the Net Settlement Amount ("Qualifying Workweek"). Each Qualifying Workweek will be equal to one (1) settlement share.

ii.    The total number of settlement shares for all Eligible Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Class Member's Settlement Award.

40.    All Settlement Award determinations shall be based on Defendant's payroll and timekeeping records in accordance with Paragraph 31(c).

DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

41.     Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages, and accordingly, on each Settlement Award NCCBH shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to 50% of each Settlement Award distributed, and NCCBH shall pay the employer's share of all required FICA and FUTA taxes on such amounts  NCCBH shall pay these taxes, which amounts shall be deposited into the separate NCCBH fund prior to the Settlement Awards being mailed to Eligible Class Members, in addition to the Gross Settlement Amount. Amounts withheld will be remitted by NCCBH from the Qualified Settlement Fund to the appropriate governmental authorities. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. NCCBH shall provide payroll tax information as necessary to accomplish the income and employment tax withholding on the wage portion of each Settlement Award, and the Form 1099 reporting for the non-wage portion of each Settlement Award.

42.     Class Counsel and Defendant's Counsel do not intend for this Settlement Agreement to constitute legal advice relating to the tax liability of any Eligible Class Member. To the extent that this Settlement Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

43.     NCCBH shall provide Class Counsel with a final report of all Settlement Awards, at least ten (10) calendar days before the Settlement Awards to Eligible Class Members are mailed.

44.     NCCBH shall mail all Settlement Awards to Eligible Class Members within thirty (30) days after the Effective Date or as soon as reasonably practicable. NCCBH shall then provide written certification of mailing to Class Counsel.

45.     All Settlement Award checks shall remain valid and negotiable for one hundred forty (140) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. With eighty (80) days remaining, a reminder letter will be sent via U.S. mail and email (if email addresses are available) to those who have not yet cashed their settlement check, and during the last fifty (50) days of the check cashing period, a telephone call (if telephone numbers are available) will be placed to those that have still not cashed their check to remind them to do so. At the conclusion of the one hundred and forty (140) day check cashing deadline, any Eligible Class Members who have not cashed their Settlement Award checks shall nevertheless be deemed to have finally and forever released the Eligible Class Members' Released Claims, as applicable, except that the Eligible Class Member shall not release any FLSA claims against Defendant.

46.     <u>Remaining Monies</u>. If at the conclusion of the one hundred and forty (140) day check void period set forth above, any monies remaining shall revert to NCCBH.

## MISCELLANEOUS

47.     <u>No Admission of Liability</u>. This Settlement Agreement and all related documents

12

are not and shall not be construed as an admission by Defendant or any of the Releasees of any fault or liability or wrongdoing.

48.    Defendant's Legal Fees. Defendant's respective legal fees and expenses in this Action shall be borne by Defendant as applicable.

49.    **Nullification of the Settlement Agreement.** In the event: (a) the Court does not preliminarily or finally approve the Settlement as provided herein; or (b) the Settlement does not become Final for any other reason; or (c) the Effective Date does not occur, the Parties agree to engage in follow up negotiations with the intent of resolving the Court's concerns that precluded approval, and if feasible, to resubmit the settlement for approval within thirty (30) days. If the Settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, then either Party may void this Agreement; at that point, the Parties agree that each shall return to their respective positions on the day before this Agreement and that this Agreement shall not be used in evidence or argument in any other aspect of their litigation. In addition, upon voiding of the Agreement, the Gross Settlement Amount will be returned to Defendant NCCBH consistent with Paragraph 32(a).

50.    Inadmissibility of Settlement Agreement. Except for purposes of settling this Action, or enforcing its terms (including that claims were settled and released), resolving an alleged breach, or for resolution of other tax or legal issues arising from a payment under this Settlement Agreement, neither this Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

51.    Computation of Time. For purposes of this Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day. The term "days" shall mean calendar days unless otherwise noted.

52.    Interim Stay of Proceedings. The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement. Further, without further order of the Court, the Parties hereto may agree in writing to reasonable extensions of time to carry out any of the provisions of the Settlement.

53.    **Amendment or Modification.** This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

54.    Entire Settlement Agreement. This Agreement with exhibits constitutes the entire Agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous

13

DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

negotiations, memoranda, agreements, understandings, and representations, whether written or oral, including the Parties' Memorandum of Understanding executed on are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that they have not relied on any promise, representation or warranty, express or implied, not contained in this Agreement. No rights hereunder may be waived except in writing.

55.   **Authorization to Enter Into Settlement Agreement.** The Parties warrant and represent that they are authorized to enter into this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to affect the implementation of the Agreement. In the event that the Parties are unable to reach resolution on the form or content of any document needed to implement this Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance of the Court to resolve such disagreement.

56.   **Binding on Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of Named Plaintiff, Defendant, Opt-In Plaintiffs, the Settlement Class Members and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize. The Parties hereto represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

57.   **Counterparts.** This Agreement may be executed in one or more counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument. All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

58.   **No Signature Required by Eligible Class Members.** Only the Named Plaintiff will be required to execute this Settlement Agreement. The Settlement Notice will advise all Settlement Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Settling Class Member.

59.   **Cooperation and Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

60.   **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. The Parties shall work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and final Judgment and

dismissal. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

61.     **Communications with Media**. Named Plaintiff and Plaintiff's Counsel will refrain from issuing any press release addressing the Settlement or contracting media representatives. If contacted by media representatives, Named Plaintiff and Plaintiff's Counsel may state that the Parties amicably resolved the dispute and may direct the media representative to the public record.

62.     Governing Law. All terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania.

63.     **Jurisdiction of the Court.** The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement and all orders and judgments entered in connection therewith, and the Parties and their Counsel submit to the jurisdiction of the Court for this purpose.

**IN WITNESS WHEREOF**, the Parties and their Counsel have executed this Settlement Agreement as follows:

PLAINTIFF:        _Jayson Carroll_        Date: _____, 2022        4/20/2022 | 2:09 PM EDT
                  E393F0CC33A94FB...
                  Jayson Carroll

**APPROVED AS TO FORM BY CLASS COUNSEL:**

                  _Ryan Allen Hancock, Esq._        Date: _____, 2022        4/20/2022 | 1:51 PM EDT
                  B0F3CBE613E0417...
                  Ryan A. Hancock, Esquire
                  **WILLIG, WILLIAMS & DAVIDSON**
                  1845 Walnut Street, 24th Floor
                  Philadelphia PA, 19103
                  Telephone: (215) 656-3679
                  rhancock@wwdlaw.com

DEFENDANT:        _David Como_        Date: _4/19_, 2022
                  Northeast Community Center for Behavioral Health

**APPROVED AS TO FORM BY COUNSEL FOR DEFENDANT:**

                  _Christine D. Steere_        Date: _4/20_, 2022
                  Christine D. Steere, Esquire
                  **DEASEY MAHONEY & VALENTINI, LTD**
                  103 Chesley Drive., Suite 101
                  Media, PA 19063

DocuSign Envelope ID: 8B7AFBB7-76FD-4DB9-825F-36FA2F1FE445

Telephone: (610) 892-2732
csteere@dmvlawfirm.com