**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAYSON CARROLL, individually and on behalf of all persons similarly situated,** | : | **Civil Action No. 2:21-cv-01288** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NORTHEAST COMMUNITY CENTER FOR BEHAVIORAL HEALTH,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF THE SETTLEMENT AGREEMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ........................................................................................... 1

II.    PROCEDURAL HISTORY............................................................................. 3

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ................................... 5

    A.    The Settlement Class............................................................................... 5

    B.    Distribution of the Gross Settlement Amount and Release of Claims................... 5

    C.    Notice to Potential Settlement Class Members...................................... 8

IV.    DISCUSSION .................................................................................................. 9

    A.    Applicable Legal Standards .................................................................... 9

        1.    Legal Standard for Approval of FLSA Settlements.................................... 9

        2.    Legal Standard for Approval of Rule 23 Class Action Settlements ......... 11

    B.    The Terms of the Proposed Settlement Are Fair and Reasonable When Considering the Uncertainty of Continuing to Litigate This Matter.................... 12

    C.    The Settlement Agreement is the Product of Informed, Non-Collusive Negotiation and Does Not Present Any Grounds to Question Its Fairness ............................. 15

    D.    The Additional Service Award to the Named Plaintiffs is Justified and Should Be Approved............................................................................................. 17

    E.    The Proposed Settlement Furthers the Purpose of the FLSA ............................. 19

    F.    The Court Should Preliminarily Certify the Proposed Settlement Class Under Fed. R. Civ. P. 23 .......................................................................................... 20

        1.    The  Settlement Class is Sufficiently Numerous and Joinder is Not Impracticable.......................................................................... 21

        2.    The Settlement Class Seeks Resolution of Common Questions.............. 23

        3.    The Claims of the Named Plaintiffs Are Typical of the Settlement Class. ..................................................................................... 24

        4.    Class Counsel and Plaintiffs Meet the Adequacy Requirements of the Settlement Class....................................................................... 24

i

5.      The Settlement Class Satisfies The Predominance and Superiority Requirements of Fᴇᴅ. R. Cɪᴠ. P. 23(b)(3) ................................................ 25

G.      The Proposed Notice Provides Adequate Notice To The Eligible Class Members And Satisfies Due Process ........................................................................ 25

H.      The Proposed Implementation Schedule ............................................................ 26

V.      CONCLUSION ............................................................................................................. 27

## **<u>TABLE OF AUTHORITIES</u>**

<u>CASES</u>

Bredbenner, No. 09-cv-905, 2011 WL 1344745, at *22-24 .............................................................18

Brooklyn Sav. Bank V. O'Neil, 324 U.S. 697, 706 (1945) ............................................................9

Brown v. True Blue, Inc., No. 10-514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013).......10

Brumley v. Camin Cargo Control, Inc. Nos. 08-1798, 10-2461 and 09-6128, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) ...........................................................................................................10

In Re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 WL 911718, AT *2 (E.D. PA. Mar. 7, 2014).................................................................................................................................9

Chaverria V. New York Airport Serv., LLC, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) .................14

Craig v. Rite Aid Corp., No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013, *appeal dismissed* (3d Cir. Feb. 20, 2013...........................................................................................15

Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000).........................................17

Cuttic V. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012).......................9,10

Deitz v. Budget Renovations & Roofing, Inc., No. 4:12-cv-0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013)..........................................................................................................................15

Farris V. JC Penny Co., Inc., 176 F. 3D 706, 711 (3d Cir. 1999) .................................................10

Girsh V. Jepson, 521 F. 2d 153 (3d Cir. 1975)............................................................................10

Hickman, et al v. TL TRANSPORTATION, LLC et al., Case No. 2:17-cv-01038 (E.D. OF Pa.) .....................................................................................................................................................19

In re Certainteed Fiber Cement Siding Litig., 303 F.R.D. 199, 216 (E.D. Pa. 2014)...................15

In re Ge. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F. 3d 768,784 (3d Cir. 1995). ....................................................................................................................................11,12

In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003)..........................11,12

In re Mid-Atl. Toyota Antitrust Litig., 564 F. Supp. 1379, 1384 (D. Md. 1983) .........................12

In re Rent-Way Sec. Litig., 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ......................................16

In re Janney, 2009 WL 213724 at *12 .........................................................................................18

Kauffman V. U-Haul Int'l., Inc., 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. PA. April 24, 2019) ................................................................................................................................10

Klingensmith V. BP Prods. N. Amer., Inc., No. 07-cv-1065, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) ................................................................................................................11

Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1354 (11th Cir. 1982)......................................10

Martin v. Foster Wheeler Energy Corp., No. 3:06-cv-0878, 2008 WL 906472, at *8-*9 (M.D. Pa. Mar. 31, 2008) ..............................................................................................................17

Reed v. Gen. Motors Corp., 703 F. 2d 170, 175 (5th Cir. 1983) ....................................................16

Sakalas v. Wilkes Barre Hosp. Co., No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ..........................................................................................................................18

Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 570 n. 12 (E.D. Pa. 2001) ................................................................................................................................15

Tompkins V. Farmers Ins. Exch., No. 5:14-cv-3737, 2017 WL 4284114, at *7 (E.D. Pa. Sept. 27, 2017)................................................................................................................................10

UAW v. Gen. Motors Corp., No. 05 Civ. 73991, 2006 WL 891151, 15 *18 (E.D. Mich. Mar. 31, 2006) ....................................................................................................................................16

Walsh V. Great Atl. & Pac. Tea Co., Inc., 726 F. 2d 956, 965 (3d Cir. 1983)..............................12

Young v. Tri Cnty. Sec. Agency, Inc., 13-cv-5971, 2014 WL 1806881, at *1-*8 (E.D. Pa. May 7, 2014) ........................................................................................................................17

## STATUTES

43 P.S. §§ 333.101, et seq. (PMWA) ........................................................................................3,17

29 U.S.C. §§ 201, et seq. (FLSA) ...........................................1,2,3,8,9,10,11,12,13,16,17

29 U.S.C. §§ 216.........................................................................................................................3,5,9

## RULES

Fed. R. Civ. P. 23 ...............................................................................................5,9,10,11,13

## OTHER AUTHORITIES

*Manual For Complex Litigation (Third)* § 30.41.................................................................*11,15,16*

*2 Newberg On Class Actions* § 11.41 at 11-88 (3d ed. 1992) ......................................................*11*

iv

## I.      INTRODUCTION

This class and collective action wage and hour lawsuit against Defendant Northeast Community Center for Behavioral Health ("Defendant" or "NCCBH") has been settled, and Plaintiff Jayson Carroll, individually and on behalf of all similarly situated employees ("Plaintiffs"), respectfully submits this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's preliminary approval.[1]

This lawsuit concerns NCCBH's alleged unlawful policy and practice of failing to pay overtime compensation to Blended Case Managers in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and state law.

The Parties subsequently agreed to engage in settlement discussions through a series of settlement conferences before the Hon. Judge Elizabeth T. Hey, USMJ. Following the exchange of informal discovery, extensive arm's-length settlement negotiations, and three (3) settlement conferences, the Parties were able to reach a class and collective settlement of this matter. *See* Declaration of Ryan Allen Hancock ("Hancock Decl.") ¶¶ 11, 15. The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (attached as Exhibit 1).

The Settlement includes a gross cash payment by NCCBH of Three Hundred Thousand Dollars ($300,000.00) (the "Gross Settlement Amount"), inclusive of attorneys' fees and costs, settlement administration costs, and a service award to the Named Plaintiff that is approved by the Court. *See* Settlement Agreement ¶ 23(n). Every Eligible Class Member[2] will receive a Settlement

---

[1] The Settlement Agreement has been amended pursuant to this Court's October 14, 2022 Order.
[2] Eligible Class Member means all Settlement Class Members who do not file timely and valid exclusion requests from the Settlement. *Id.* at ¶ 23(h).  Settlement Class or Settlement Class Members means the Named Plaintiff, all Opt-In Plaintiffs, and all current or former Blended Case

Award, based on the number of weeks when he or she worked between March 17, 2018 through March 17, 2022. *Id.* at ¶¶ 23(x), 39.

In exchange, the Settlement Agreement contains a release of all FLSA and state wage and hour claims that were or could have been asserted in the Complaint based on the facts alleged for unpaid overtime wages and liquidated or other damages from March 17, 2018 through March 17, 2022. *Id.* at ¶ 25. No Eligible Class Member shall be deemed to release a FLSA claim unless he/she cashes his/her Settlement Award check. *Id.* at ¶¶ 25, 26.

Class Counsel believes that the negotiated Settlement Agreement provides an excellent settlement for the Named Plaintiff and the Settlement Class, with respect to their claims for unpaid overtime wages resulting from NCCBH's alleged violations of the FLSA and related state law. *See* Hancock Decl. ¶¶ 9-19. Because of the lack of timekeeping records maintained by NCCBH for off-the-clock time, the parties each modeled various damage and claim scenarios utilizing various legal and factual assumptions, as well as payroll data from NCCBH and presented them to each other under the supervision of Hon. Judge Elizabeth T. Hey, USMJ. Hancock Decl. ¶ 18. The Net Settlement Amount of $182,000.00 (*i.e* the amount that will actually be paid out to Settlement Class Members after deductions are made for fees, costs, and service awards) represents 83% percent of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions that each Blended Case Manager worked approximately five (5) hours of overtime per work week. *Id.* at ¶ 13.

Plaintiffs respectfully submit that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for preliminary approval under federal law and

---

Managers who were employed NCCBH between March 17, 2018 through March 17, 2022. *Id.* at Settlement Agreement ¶ 23(x). There are approximately thirty-three (33) Settlement Class Members, including the Named Plaintiff. Hancock Decl. ¶ 23.

falls well within the range of reasonableness. Accordingly, Plaintiffs request that the Court issue an Order: (1) granting preliminary approval of the proposed Settlement Agreement as fair, reasonable and adequate under Rule 23(e); (2) granting approval to the terms and conditions contained in the Settlement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act; (3) conditionally certifying the Settlement Class as a collective pursuant to 29 U.S.C. § 216(b), pending final approval of the settlement; (4) preliminarily certifying the Settlement Class with respect to the state law claims under Rule 23; (5) preliminarily appointing Plaintiff Jayson Carroll as Representative of the Settlement Class; (6) preliminarily appointing Willig, Williams & Davidson as Class Counsel for the Settlement Class; (7) approving the plan of notice to the Settlement Class Members, including approving the Notice attached to the Settlement Agreement as Exhibit A; and (8) approving the proposed schedule and procedure for the final approval of this Settlement. Defendant does not oppose this Motion.

## II.   PROCEDURAL HISTORY

On March 17, 2021, Plaintiff Jayson Carroll, a former non-exempt hourly employee of Northeast Community Center for Behavioral Health, filed a Class and Collective Action Complaint against Defendant NCCBH alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201*, et seq.* ("FLSA") and the Pennsylvania Minimum Wage act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* (Dkt. No. 1; Settlement Agreement ¶ 2.). NCCBH filed its Answer on May 28, 2021, denying liability.  (Dkt. No. 5).

On September 9, 2021, the Parties entered into a Tolling Agreement to toll the statute of limitations on any claim under the FLSA or any state law claim for unpaid wages for all former and current Blended Case Managers that worked for NCCBH between March 17, 2018 through March 17, 2022.

Additionally, on September 9, 2021 the Court ordered the matter to a settlement conference

before the Hon. Elizabeth T. Hey, USMJ.  (Dkt. No. 20; Settlement Agreement ¶ 8).

On December 21, 2021, prior to the settlement conference, NCCBH produced data and information to facilitate informed settlement discussions, including payroll data, pay policies, and class list for all Blended Case Managers who worked for NCCBH between March 17, 2017 through the present in Philadelphia, which Plaintiffs' Counsel reviewed and analyzed. On January 20, 2022, NCCBH supplemented their response and produced further data and information to facilitate informed settlement discussions. (Settlement Agreement ¶¶ 11, 12).

The Parties participated in settlement conferences before Hon. Elizabeth T. Hey, USMJ on January 26, 2022 (Dkt. No. 27), February 3, 2022 (Dkt. No. 29) and on February 25, 2022 (Dkt. No. 36).

As a result of the various settlement conferences and arm's-length negotiations between the Parties, the Parties have agreed to settle the Action in accordance with the terms of the Settlement Agreement. Accordingly, the Parties now present the Settlement Agreement to the Court for its approval. The Settlement offers significant advantages over the continued prosecution of this case, as the Plaintiff and the Settlement Class will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant would assert various defenses to liability. *See* Hancock Decl. ¶ 14. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Settlement Class are provided with notice of the Settlement Agreement and its terms. *See id* at *¶* 24.

As of present, fourteen (14) individuals have filed their consent forms to participate in this lawsuit, including the Plaintiff. (Dkt. Nos. 1, 4, 24, 25, 26, 32, 34, 35.) Which represents, 42.42% of the Eligible Class members as defined by the Settlement Agreement.

4

## III.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.     The Settlement Class

The Settlement Agreement provides that the Settlement Class includes "the Named Plaintiff, all Opt-in Plaintiffs, and all current or former Blended Case Managers who were employed by Defendant between March 17, 2018 through March 17, 2022." Settlement Agreement ¶ 23(x).

The Parties have agreed that, for settlement purposes only, the requisites for establishing collective action certification pursuant to 29 U.S.C. § 216(b) have been satisfied, and the Settlement Class may be certified pursuant to Fed. R. Civ. P. 23. *Id.* at ¶¶ 21, 29, 30, 31(a). Notice of the settlement will be provided to the above-defined Settlement Class in the form of the proposed Settlement Notice ("Notice") attached to the Settlement Agreement as Exhibit A by first class mail and email (where available). *Id.* at ¶¶ 23(z), 30(e); Ex. A. Every Eligible Class Member (*i.e.*, Settlement Class Members who do not exclude themselves from the Settlement) will be paid a Settlement Award. *Id.* at ¶ 38(a).

### B.     Distribution of The Gross Settlement Amount and Release of Claims

Pursuant to the Settlement Agreement, NCCBH shall electronically transfer one-third of the Gross Settlement Amount (*i.e.*, $300,000.00) to a separate bank account within 10 business days after the Court grants preliminary approval to the Settlement. *Id.* at ¶ 35(a). No later than ten (10) business days after the Effective Date, NCCBH shall electronically transfer the balance of the Gross Settlement Amount to the account. *Id.* The account will be administered by NCCBH. *Id.* at ¶¶ 35(a), 35(b).

The Gross Settlement Amount includes amounts to cover: (1) a service award for the effort in bringing and prosecuting this matter to Named Plaintiff Jayson Carroll in the amount of $15,000; and (2) the payment of attorneys' fees in the amount of up to one-third (1/3) of the Gross Settlement

Amount ($100,000.00), which will compensate Class Counsel for all work performed in the litigation as of the date of the Settlement Agreement, plus all work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action, plus the payment of out-of-pocket costs incurred by Class Counsel, not to exceed Three Thousand Dollars ($3,000). *Id.* at *¶¶* 23(n), 23(q). Class Counsel will file a Motion for Approval of Attorneys' Fees and Costs and for Final Approval of the Settlement prior to the Court's final fairness hearing. ¶ 34.

Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Net Settlement Amount would be approximately One Hundred Eighty-Two Thousand Dollars ($182,000.00). Awards to Eligible Class Members will be made from the Net Settlement Amount. Specifically, all Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount based on the total number of work weeks during which the Eligible Class Member was employed by NCCBH as a Blended Case Manager between March 17, 2018 through March 17, 2022. *Id.* at ¶ 38.

In addition, the amount of $100.00 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Members so that each Eligible Class Member receives at least $100.00 in exchange for his/her release of claims pursuant to the Settlement Agreement. *Id.* All Settlement Award determinations shall be based on Defendant's previously produced payroll and timekeeping data for Settlement Class Members. *Id.* at ¶ 39.

Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages and, accordingly, on each Settlement Award, NCCBH shall effectuate federal and

applicable state income and employment tax withholding as required by law with respect to 50% of each Settlement Award distributed, and NCCBH shall pay the employer's share of all required FICA and FUTA taxes on such amounts, in addition to the Gross Settlement Amount. *Id.* at ¶ 40. In addition to the Gross Settlement Amount, .NCCBH shall pay these taxes, which amounts shall be deposited into the Settlement Fund after the Settlement Awards are mailed to Eligible Class Members. *Id.* Amounts withheld as the employee's share of FICA and FUTA taxes, as well as amounts paid into the Settlement Fund by Defendant as representing the employer's share of FICA and FUCA taxes, will be remitted by NCCBH from the Settlement Fund to the appropriate governmental authorities. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. *Id.*

Settlement Awards for each Eligible Class Member will be mailed to them within thirty (30) days after the Final Approval Order, or as soon as reasonably practicable. *Id.* at ¶ 43. Checks shall remain valid and negotiable for 140 days from the date of their issuance. *Id.* at ¶ 44. If, at the conclusion of the 140-day check void period, there are any monies remaining in the Settlement Fund, those monies shall revert back to NCCBH. *Id.* at ¶ 45.

In exchange for the Settlement benefits, the Named Plaintiff and all Eligible Class Members who worked in Pennsylvania "finally, forever and with prejudice [release] . . . any and all state law claims for unpaid overtime, state wage and hour, and related common law claims against Defendant that accrued during their work with Defendants during the Class Period, without limitations, all state claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses." *Id.* at ¶¶ 26, 27, 28. Eligible Class Members who cash or deposit their Settlement Award check will be deemed to have released their

FLSA claims. *Id.* Defendant agrees that participation in the settlement and release of the Eligible Class Members' Released Claims may not be used to assert collateral estoppel, *res judicata*, waiver or any other claim preclusion of FLSA claims not included in the Eligible Class Members' Released Claims with respect to individuals who did not specifically release those FLSA claims in this Agreement. *Id.* No releases shall be effective until the Effective Date of the Settlement Agreement. *Id.* at ¶ 20.

### C.   Notice to Potential Settlement Class Members

The Settlement Agreement provides what Plaintiff believes are the fairest and most practicable procedures for notifying Settlement Class Members of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement – direct mail and electronic mail ("email"). *Id.* at ¶ 30(e). Under the terms of the Settlement Agreement, within ten (10) business days after the Court's Preliminary Approval Order, Defendant shall create and provide Class Counsel with an electronic database containing the names, last known addresses, last known telephone numbers, and last known email addresses (if any) for Settlement Class Members. *Id.* at ¶ 30(c). In order to provide the best notice practicable, NCCBH will take reasonable efforts to identify current addresses via public and proprietary systems. *Id. at* ¶ 30(d).

Within thirty (30) business days after the Court's Preliminary Approval Order, NCCBH shall mail and email (if email addresses are available) an agreed upon and Court-approved Notice to the Named Plaintiff, Opt-in Plaintiffs, and Settlement Class Members. *Id.* at ¶ 30(e). Any Notices returned to NCCBH with a forwarding address shall be re-mailed by NCCBH within three (3) business days following receipt of the returned mail. *Id.* at ¶ 30(f). If any Notice is returned to NCCBH without a forwarding address, NCCBH shall undertake reasonable efforts to search for the correct address and shall promptly re-mail the Settlement Notice to any newly found addresses. *Id*. In no circumstance shall such re-mailing extend the Notice Deadline. *Id.*

Settlement Class Members who worked in the state of Pennsylvania have sixty (60) calendar days from the time the Notice is initially mailed by NCCBH to object to or opt-out of the Settlement ("Notice Deadline"). *Id.* at ¶¶ 23(r), 32; Ex. A ¶ 6.  Such Settlement Class Members who wish to object to the Settlement may do so by submitting a written statement objecting to Class Counsel and counsel for Defendant on or before the Notice Deadline. *Id.* at ¶ 31; Ex. A ¶ 6. Additionally, such Settlement Class Members who wish to exclude themselves from the Settlement ("opt out") must mail to Class Counsel or NCCBH a written statement indicating that they do not wish to participate on or before the Notice Deadline or be bound by the Settlement. *Id.* at ¶ 32; Ex. A ¶ 6.

Defendant will not take any adverse action against any individual on the grounds that he/she is eligible to participate or does participate in the Settlement. *Id* at ¶ 30(g).

## IV.    DISCUSSION

Plaintiff respectfully requests that the Court enter the accompanying proposed order preliminarily approving the Settlement under Rule 23 and approving the terms as a fair and reasonable resolution of a *bona fide* dispute under the FLSA.

### A.    Applicable Legal Standards

#### 1.    Legal Standard for Approval of FLSA Settlements

The FLSA provides that employers who violate its provisions "shall be liable to the employee … affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be…." 29 U.S.C. § 216(b). While the FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement, *see, e.g., Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945), FLSA claims may be settled or compromised where a district court approves the settlement pursuant to 29 U.S.C. § 216(b), *see, e.g., In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718,

9

at *2 (E.D. Pa. Mar. 7, 2014) (citing *Cuttic v. Crozer-Chester Med. Ctr.,* 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012)).[3]

A district court's approval of an FLSA collective action settlement requires only a determination that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *7 (E.D. Pa. Sept. 27, 2017) (citing *Cuttic*, 868 F. Supp. 2d at 466 (quoting *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).[4]

While the United States Court of Appeals for the Third Circuit has not yet detailed the contours of this standard, "district courts in this Circuit have referred to the considerations set forth in *Lynn's Food Stores*." *Chickie's*, 2014 WL 911718 at *2 (citing *Brown v. True Blue, Inc*., No. 10-514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013); *Kauffman v. U-Haul Int'l, Inc.,* 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa. April 24, 2019) (citing *Farris v. JC Penny Co. Inc.,* 176 F. 3d 706, 711 (3d Cir. 1999).[5]

"Under *Lynn's Food Stores*, a district court may find that a proposed settlement resolves a *bona fide* dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute.'" *Chickie's*, 2014 WL 911718 at *2 (citing *Lynn's Food Stores,* 679 F.2d at 1354). "Typically, Courts regard the adversarial nature of

---

[3] FLSA claims may also be compromised or settled where the Secretary of Labor supervises an employer's payment to employees under 29 U.S.C. § 216(c). *See, e.g., In re Chickie's & Pete's Wage & Hour Litig*., No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citing *Cuttic v. Crozer-Chester Med. Ctr.,* 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012).

[4] *See also Brumley v Camin Cargo Control, Inc*., Nos. 08-1798, 10-2461 and 09-6128, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food*, 679 F.2d at 1354) (collecting cases).

[5] While the Third Circuit has not definitively set out factors for evaluating the fairness of a settlement in an FLSA collective action, some district courts in this Circuit have utilized the factors used for assessing the fairness of class action settlements under Rule 23(e) that are set forth in *Girsh v. Jepson*, 521 F. 2d 153 (3d Cir. 1975). *See, e.g., Altnor*, 197 F. Supp. 3d at 764.

a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman*, 2019 WL 1785453, at *2. "Additionally, a strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length." *Id.* (citation omitted).

As set forth below, the proposed Settlement in this case meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. Moreover, the proposed Settlement falls well within the range of possible approval, because it is both substantively and procedurally fair. As such, the Settlement should be approved.

### 2.     Legal Standard for Approval of Rule 23 Class Action Settlements

Rule 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41.

Plaintiff now seeks preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e). "The preliminary determination establishes an initial presumption of fairness." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* at 785 (citing 2 Newberg on Class Actions § 11.41 at 11–88 (3d ed.1992)); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42, at 238 (1997); *see also Klingensmith v. BP Prods. N. Amer., Inc.*, No. 07-cv-1065, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) (holding "the settlement merits preliminary approval [as the settlement was] reached as a result of arm's-length negotiation

between experienced counsel aided by an experienced mediator."); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

The standard for final approval of a settlement is that the settlement is fair, adequate, and reasonable to the class. *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983). When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *see also In re Gen. Motors Corp.*, 55 F.3d at 785 (holding that the "preliminary determination establishes an initial presumption of fairness"). That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 638.

As set forth below, the proposed Settlement in this case falls well within the range of possible approval because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement.

### B.   The Terms of the Proposed Settlement Are Fair and Reasonable When Considering the Uncertainty of Continuing to Litigate This Matter

Here, the proposed Settlement meets both the standard for preliminary approval under Rule 23(e) as well as under the FLSA. The Gross Settlement Amount provides Settlement Class Members with certain payment of wages that would have been owed if the case had been taken to

trial, and it was carefully negotiated based on a substantial investigation by Class Counsel, detailed damages analyses, and the review and analysis of documents produced by Plaintiff and Defendant in preparation for mediation. *See* Hancock Decl. ¶¶ 11, 12.

During the course of their extensive settlement negotiations, the Parties exchanged data regarding all Settlement Class Members, and performed and exchanged detailed exposure models and analyses, in addition to exchanging detailed information and engaging in numerous discussions regarding the various issues in the case. *See Id.* The Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to the following:

1) the amount of time that Blended Case Managers spent performing their work on and off-the-clock[6];

3) whether Defendant would be able to meet their burden of demonstrating that NCCBH's alleged unlawful pay system was taken in good faith with reasonable grounds for their belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid the imposition of liquidated damages;

4) whether the Court would certify a class action under Rule 23 or grant final certification of a collective action under the FLSA; and

5) whether Plaintiff and/or Defendant would appeal myriad legal or factual determination, including class/collective action treatment, liability, and damages.

Ultimately, the Settlement that the Parties reached reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiff would face if the case proceeded in litigation. *See Id.* at ¶ 19. The Net Settlement Amount of approximately $182,000.00 (*i.e* the amount that will actually be paid out to Settlement Class

---

[6] Because NCCBH did not keep accurate time records of the time that Blended Case Managers worked during the relevant time period, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. The parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations. Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue. Hancock Decl. ¶ 18.

Members after deductions are made for fees, costs, service awards, and administration costs*)* represents approximately Eighty Three percent (83%) of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions that all Blended Case Managers worked four (4) hours of off-the-clock per work week. *Id.* at ¶ 13.

This is an excellent result for the Settlement Class Members, especially considering the risks of continued litigation. First, there was a risk that the Plaintiff would not succeed in maintaining a collective or class through trial. *See id.* at ¶ 14. Second, a trial on the merits would involve risks for the Plaintiff as to the appropriate rate and calculation of damages, and any verdict at trial could be delayed based on appeals by Defendant. *See id.* at ¶¶ 14, 19. By contrast, Settlement Class Members will be entitled to receive significant and certain sums of money for their unpaid wages.

In addition, the proposed allocation formula is fair and reasonable and should be preliminarily approved. *See Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Settlement Class Members do not need to take any action in order to receive a Settlement Award. Under the proposed allocation formula, each Eligible Class Member will receive a minimum amount of one hundred dollars ($100.00) in addition to settlement shares that bear a reasonable relationship to his/her potential damages (*i.e.*, a *pro* rata portion of the Net Settlement Amount that is calculated by identifying each week that an Eligible Class Member worked during the applicable Class Period, for which he or she will be entitled to one (1) settlement share, subsequently dividing the Net Settlement Amount by the total number of settlement shares for all Eligible Class Members to

reach a per-share dollar figure, and finally multiplying that per share dollar figure by each Eligible Class Member's number of settlement shares). Settlement Agreement ¶ 39. This allocation formula takes into account that Settlement Class Members had different schedules, worked different amounts of overtime hours on a weekly basis, and, if they prevailed, would be entitled to different amounts of damages. The Notice will also provide the minimum amount that each Settlement Class Member can expect to receive from the Settlement. Ex. A.

Where, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the class members, it is an indication that the proposed settlement is fair, reasonable, and adequate. *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continue litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources.").[7] In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

### C.   The Settlement Agreement Is the Product of Informed, Non-Collusive Negotiation and Does Not Present Any Grounds to Question Its Fairness

It is well-established that, in determining whether a proposed settlement should be preliminarily approved, courts may consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations." *Schwartz v. Dallas Cowboys Football*

---

[7] *See also In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–cv–0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate.").

*Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001) (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) §30.44). Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight."); *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case, that "the endorsement of the parties' counsel is entitled to significant weight.").

The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations. *See* Hancock Decl. ¶¶ 10, 11, 15. The proposed Settlement was reached only after (1) the exchange of substantial documents and records; (2) multiple pre-settlement conference calls; (3) preparation and exchange of mediation statements; and (4) three (3) settlement conferences before Hon. Elizabeth T. Hey, USMJ, which included additional extensive arm's-length negotiations between counsel for the Parties both before and after the settlement conferences. *See Id.* at ¶¶ 11, 15. As described above, Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto. The Gross Settlement Amount is based on an intensive review of the facts and law. *See Id.* at ¶¶ 12, 16.

Class Counsel is experienced and a respected class action litigator, who specializes in wage theft actions on behalf of workers brought under the Fair Labor Standards Act and related state

wage laws. *See* Hancock Decl. ¶¶ 4, 5, 6. Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believes this Settlement will provide a substantial benefit to each of the Settlement Class Members. *Id.* at ¶ 20.

In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the parties.

**D.      The Additional Service Award to the Named Plaintiff Is Justified and Should Be Approved**

Pursuant to the Settlement Agreement, NCCBH has agreed to provide Named Plaintiff Jayson Carroll with a service award for his efforts in bringing and prosecuting this matter. *See* Settlement Agreement ¶¶ 23(q), 36(a). NCCBH has agreed to a service award in the amount of Fifteen Thousand Dollars ($15,000.00) to Named Plaintiff Jayson Carroll.   Subject to Court approval, this amount will be paid to the Named Plaintiff from the Gross Settlement Amount and shall be in addition to his recovery of unpaid overtime by his participation as an Eligible Class Member who will receive a Settlement Award.

 "[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted); *see also Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472, at *8-*9 (M.D. Pa. Mar. 31, 2008) (approving incentive award for named representatives a total of $10,000.00). It is particularly appropriate to compensate named representative plaintiffs with service awards where they have actively assisted Class Counsel in their prosecution of the litigation for the benefit of a class. *Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971, 2014 WL 1806811, at *1- *8 (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA and PMWA, where named plaintiff released all waivable claims arising out of

employment and made significant contributions to the litigation).

Here, the proposed additional payment is justified by the benefits that Plaintiff's diligent efforts have brought to the Settlement Class Members. Plaintiff took the significant risk of coming forward to represent the interests of his fellow employees. *See* Hancock Decl. ¶¶ 21, 22. The Named Plaintiff worked with Class Counsel, providing background information about his employment, about Defendant's policies and practices, and about the allegations in this lawsuit. *See Id*. The Named Plaintiff attended three (3) settlement conferences and reviewed the data and documents produced by NCCBH.  *Id.* The Named Plaintiff works in an industry in which workers are largely fungible, and he bravely took the risk to step forward on behalf of his fellow workers, knowing that his name would be a on a public docket available through an internet search, and knowing that prospective employers might take his participation in such a lawsuit in consideration when making hiring decisions.  *Id.* The Named Plaintiff risked his reputation in the community and in his field of employment in order to participate in this case on behalf of the Class. *See Id.*

The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (approving service payments of $10,000.00 to each of eight named plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000.00); *In re Janney*, 2009 WL 2137224 at *12 (approving

$20,000.00 enhancement awards for each of three named plaintiffs in wage and hour settlement); *Hickman et al. v. TL Transportation, LLC et al.*, Case No. 2:17-cv-01038 (E.D. of Pa) (approving $15,000.00 enhancement awards to the name plaintiffs in a wage and hour settlement.).

For these reasons, the service award payment of $15,000 to the Named Plaintiff Jayson Carroll should be preliminarily approved as fair and reasonable.

### E.    The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *Compare Brown*, 2013 WL 5408575, at *3 (finding settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards); *Cheeks v. Freeport Pancake House*, 796 F.3d  199 (2d Cir. 2915) (outlining provisions that frustrate the purpose of the FLSA).

Indeed, the settlement furthers the purposes of the FLSA by providing Eligible Class Members with substantial recovery towards their alleged unpaid overtime that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency....").

Specifically, the Settlement's release provisions are limited to wage and hour claims that occurred prior to March 17, 2022, and Settlement Class Members will not release FLSA claims unless they cash or deposit their Settlement Check. Agreement ¶¶ 24, 25.  The Settlement contains no confidentiality or indemnification provisions, or any prohibitions on future employment. *See*

*generally* Agreement.  All Class Members will automatically receive a check for wages without the need to submit a Claim Form. *Id.*  Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### F.   The Court Should Preliminarily Certify the Proposed Settlement Class Under Fed. R. Civ. P. 23[8]

In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (citing *Wetzel v. Liberty Mut. Ins. Co*., 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975)). A case may be certified as a class action under Rule 23 when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *Weiss v. York Hosp*., 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 527 (3d Cir. 2004).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only

---

[8] For a collective action to proceed under section 216(b) of FLSA, two requirements must be met: (1) all members of the collective action must affirmatively consent to join; and (2) all members of the collective action must be "similarly situated." *See Young*, 2014 WL 1806881, at *2. Because the requirements of Rule 23 are more stringent than Section 216(b) of the FLSA, Plaintiff contends that he has also met the criterion for conditionally certifying the Settlement Class as a collective pursuant to 29 U.S.C. § 216(b), pending final approval of the settlement. Plaintiff will seek final certification of the Settlement Class in their Motion for Final Approval.

individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

A party that seeks to certify a settlement class must satisfy the same requirements necessary to maintain a litigation class. *In re Gen. Motors Corp.*, 55 F.3d at 778 (discussing and approving use of settlement-only classes). The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Pursuant to Fed. R. Civ. P. 23(c)(1), the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (*citing Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176, 181 (E.D. Pa. 2000)).

Plaintiff moves for preliminary certification of the proposed PMWA Settlement Class under Fed. R. Civ. P. 23(b)(3), and requests that the Court preliminarily find that all of the requirements for class certification are satisfied for settlement purposes only. Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 have been and are met. *See* Settlement Agreement ¶30(a).

### 1. The Settlement Class is Sufficiently Numerous and Joinder is Impracticable

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467. The proposed Settlement Class here meets the numerosity requirement because, through Defendant's payroll records, thirty-three (33) members have been identified who worked in Pennsylvania and fourteen

21

(14) have already opted-in without notice being given. *See* Hancock Decl. ¶¶ 23. Although "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing "that the potential number of plaintiffs exceeds 40."). S*tewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). "Rule 23 doesn't provide an iron-clad numerical minimum for class certification. Rather, the number is simply the starting point; the focus is on whether, under the circumstances presented, joinder of all members into a single action would be impracticable." *Rood v. R&R Express,* 2021 U.S. Dist. LEXIS 132584, at *2 (W.D. Pa. July 16, 2021).

With a proposed class of fewer than 40 members, the "inquiry into impracticability should be particularly rigorous." *In re Modafinil Antitrust Litig*., 837 F.3d 238, 250 (3d Cir. 2016). In *In re Modafinil Antitrust* Litigation, the Third Circuit provided a "framework for district courts to apply when conducting their numerosity analyses." *Id.* at 242. The Third Circuit instructed courts to consider the following "non-exhaustive" list of factors: "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." *Id.* at 253. The first two factors—judicial economy and the ability and motivation to litigate as joined plaintiffs—are "of primary importance." *Id.* at 253-254.

In this matter, the judicial economy is better served to certify the class as the Parties have agreed to settle the matter on a class and collective basis which allows the Plaintiff and members to receive relief quicker without overburdening the court with separate individual legal actions. Moreover, it would be uneconomical for low wage workers, such as here, to individually litigate their claims which supports the ability and motivation to litigate collectively and the financial

resources of class members prongs.  Further the motivation to litigate as a class is clear – fourteen (14) individuals or (42.4% of the entire class) has already opted-in without notice being sent. Hancock Decl. ¶ 23. In this action, every member of the class resides with the Commonwealth of Pennsylvania, which favors certification. The Parties have already identified the number and identify of each potential class member, which also favors certification. Hancock Decl. ¶ 23, Settlement Agreement ¶ 23(x). Finally, the PMWA specifically anticipates the use of a class action to effectuate the purposes of the statute. In this case numerosity is satisfied and joinder is impracticable.[9]

### 2.     The Settlement Class Seeks Resolution of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the Named Plaintiff shares at least one question of fact or law with the grievances of the prospective class. *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, the claims of Named Plaintiff and the members of the Settlement Class arise from their common work as Blended Case Managers, working under Defendant NCCBH's common pay policies and alleged failure to pay them overtime. This pay plan applied to all Members of the Settlement Class, who all performed similar work on similar schedules. These sample common questions of law and fact, which Plaintiff contends apply uniformly to all members of the Settlement Class, is sufficient to satisfy the commonality requirement.

---

[9] Courts in the 3rd Circuit, including the Eastern District of Pennsylvania, have found that proposed classes lower than forty (40) are sufficiently numerous for certification purposes. *See Rood v. R&R Express,* 2021 U.S. Dist. LEXIS 132584, at *1 (W.D. Pa. July 16, 2021) (finding twenty (23) individuals in a FLSA and PMWA class sufficiently numerous); *Muse v. Holloway Credit Sols., LLC,* 337 F.R.D. 80, 85-89 (E.D. Pa. 2020) (finding that thirty-two (32) individuals sufficiently numerous); *King Drug Co. of Florence v. Cephalon, Inc.,* 309 F.R.D. 195, 204 (E.D. Pa. 2015) (finding that twenty-two (22) members sufficiently numerous).

### 3.      The Claims of The Named Plaintiff Is Typical of the Settlement Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiff's claims are reasonably coextensive with those of absent class members, and because Plaintiff possesses the same interest and suffered the same injury as the absent class members. *See Fry*, 198 F.R.D. at 468; *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Plaintiff's claims for unpaid overtime compensation during weeks when he worked as Blended Case Managers are typical of the claims of the proposed Settlement Class.  The typicality requirement is satisfied here.

### 4.      Class Counsel and the Named Plaintiff Meet the Adequacy Requirements of The Settlement Class

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), a named plaintiff must show: 1) that the potential named plaintiff has the ability and the incentive to represent the claims of the class vigorously; 2) that he or she has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class. *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the members of the proposed Settlement Class. There is no conflict between the Plaintiff and the Settlement Class in this case, and Plaintiff's claims are in line with the claims of members of the Settlement Class. Plaintiff has and will continue to aggressively and competently assert the interests of the proposed Settlement Class. Further Class Counsel are skilled and experienced in wage and hour class action litigation, and have significant experience in representing workers in wage theft actions. *See* Hancock Decl. ¶¶ 4, 5, 6.  The adequacy requirement is satisfied.

5.      **The Settlement Class Satisfies the Predominance and Superiority Requirements of FED. R. CIV. P. 23(b)(3)**

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the Settlement Class satisfies the predominance requirement. In addition, allowing the members of the Settlement Class the opportunity to participate in class settlements that yield an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions asserting claims under state statutory wage and overtime laws paralleling the FLSA. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012). Accordingly, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class for settlement purposes only.

G.      **The Proposed Notice Provides Adequate Notice to The Eligible Class Members and Satisfies Due Process**

The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Opt-in Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class

25

Members of all material elements of the Litigation and the Agreement"); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class").

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B), and related FLSA case law. All Settlement Class Members have been identified in a class list, and the Notice will be mailed directly to the last known address of each member (and those addresses that the NCCBH is able to find using reasonable investigatory methods). The Notice will also be emailed to Settlement Class Members whose email addresses are known.

The proposed Notice, which is attached to the Settlement Agreement as Exhibit A, is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Settlement Class Members, including the minimum amount each will be entitled to receive, the allocation formula, the scope of the release, the request for attorneys' fees and costs, and the procedures and deadlines for making a claim for a settlement award, opting out of the Settlement or submitting objections. *See* Settlement Agreement, Ex. A.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class or collective notice disseminated under authority of the Court and should be approved.

### H.     The Proposed Implementation Schedule

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement. The proposed schedule, which Plaintiff respectfully requests that this Court approve, is as follows:

| Defendant to send CAFA Notice | Within ten (10) business days after submission of the Settlement Agreement to the Court |
|---|---|
| Defendant and Class Counsel Provide Settlement Class Contact Information | Within ten (10) business days after the Court's Preliminary Approval Order |
| Notice Sent | Within thirty (30) business days after the Court's Preliminary Approval Order |
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs | Forty-Five (45) days after the Settlement Notice is initially mailed. |
| Deadline to Postmark Objections or Requests for Exclusion ("Objection and Exclusion Deadline") | Sixty (60) days after the Settlement Notice is initially mailed. |
| Plaintiffs' Motion for Final Approval | Five (5) business days prior to Final Approval Hearing. |
| Final Approval Hearing | At the Court's convenience, approximately one hundred (100) days after the Court's Preliminary Approval Order. |

## V.      CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court grant this Unopposed Motion for Preliminary Approval and sign the accompanying proposed preliminary approval order.

Dated: November 11, 2022                                Respectfully Submitted,

                                                                            WILLIG, WILLIAMS & DAVIDSON

                                                                            /s/ Ryan Allen Hancock
                                                                            Ryan Allen Hancock
                                                                            Attorney ID No. 92590
                                                                            WILLIG, WILLIAMS, & DAVIDSON
                                                                            1845 Walnut Street 24th Floor
                                                                            Philadelphia, PA 19103
                                                                            Telephone (215) 656-3600
                                                                            rhancock@wwdlaw.com

                                                                            *Attorney for Plaintiff and the Settlement Class*

27